THE CHICAGO, ROCK ISLAND & PACIFIC RY. Co., Plaintiff and
    Appellant, v. MICHAEL LYNCH, Defendant and Appellee,
    and D. H. WESTBROOK and LEM DICKERSON, Defendants
    and Appellants, and JOINT DRAINAGE DIS. No. 3 OF
    MUSCATINE AND LOUISA COUNTY, Intervenor and
    Appellant.

Drainage: OBSTRUCTION TO SURFACE WATER BY RAILWAYS. A railway
1  company has no right to so construct its roadbed as to obstruct the
    natural flow of surface water, but is under legal obligation to a
    dominant landowner to maintain, at reasonable intervals, sufficient
    openings to permit the surface and overflow waters to pass from
    his land into the natural course of drainage.

Same: LIABILITY OF SERVIENT OWNER. The owner of lower lands ad-
2  joining a right of way of a railway company cannot complain that
    the surface water naturally draining from land across the right of
    way is permitted to pass through openings in the right of way onto
    his land.

Same: PARTIES: INTERVENTION. Where plaintiff railway company
3  brought suit to determine whether it was under obligation to main-
    tain a certain bridge for the passage of the water of a stream, and
    to cast upon the land of certain defendants water flowing upon the
    land of another, the fact that the latter landowner had made settle-
    ment with a drainage district for land condemned for drainage
    purposes, and that assessments had been levied to pay for the land
    thus taken, did not make the drainage district a proper party to
    plaintiff's action by intervention; it having no interest in the con-
    troversy between plaintiff and defendants.

*Appeal from Louisa District Court.*—HON. W. S. WITHROW,
                            Judge.

SATURDAY, NOVEMBER 22, 1913.

   SUIT in equity against certain landowners for the purpose
of determining whether or not the plaintiff railway company

was under obligations to maintain a certain bridge, known as 110, for the accommodation of waters of a stream, known as Whisky creek, and to determine whether it had a right to cast upon the land of certain of the defendants the waters of the creek now flowing upon the land of the defendant Michael Lynch.—*Affirmed.*

*J. L. Parrish* and *Robt. J. Bannister* and *Carpenter & Hale,* for appellant railway company.

*L. A. Reiley,* for appellants Dickerson and Westbrook.

*W H. Hurley,* for appellant intervener.

*W. E. Blake* and *J. F. Devitt,* for appellee.

GAYNOR, J.—The plaintiff is the owner of a railway right of way and track extending east and west through Louisa county, in this state. The defendant Lem Dickerson is the owner of a tract of land lying on both sides of plaintiff's right of way. The defendant Westbrook owns a tract of land lying south of Dickerson's. The defendant Michael Lynch owns a tract of land lying northwest of plaintiff's railway and adjacent to Dickerson's. On the north side of plaintiff's railway track, and to the west of the land owned by Lynch and Dickerson, is a high range of hills out of which flows a stream known as Whisky creek. This stream drains a watershed of about six miles north and south and about three miles east and west and flows through an opening called Whisky hollow. Its line is generally parallel with the right of way of plaintiff company and enters into what is called Muscatine slough. From the hills where the creek emerges, thence to the slough, the land flattens out gradually to the water level of the pond adjacent to the slough. The banks of the creek are deep to the hills, gradually growing shallower as it proceeds towards the east.

This channel passes a point on defendant's right of way known as bridge 111, and thence eastward to a point opposite bridge 110.   This creek has a steep grade and a swift current and in times of freshet is heavily loaded with sediment and débris. The channel of the creek is eighteen to twenty feet wide and ranges from a point where it enters the slough to eight or ten feet deep where it emerges from the bluffs and has not sufficient capacity to hold the water in times of flood.   It is about 1,300 feet from bridge 111 on plaintiff's right of way to bridge 110. At that point the railroad grade is about nine or ten feet high. The old channel of this Whisky creek was practically east and west and parallel with plaintiff's right of way.  It subsequently broke through at a point about opposite bridge 111 and thence formed a new channel, running east along the right of way, to a point known as bridge 110.   This bridge 110 was formerly a forty-four-foot opening, or about forty feet in the clear between the piers.   After the waters of Whisky creek had passed from their old channel and proceeded along the right of way of plaintiff company eastward to a point known as bridge 110, it passed through that opening, before the opening was closed. It broke from the old channel, opposite bridge 111 and about 1,300 feet west of bridge 110.   The point where it broke loose from the old channel was about one hundred and fifty or two hundred feet from the right of way.   In 1897 or 1898 an iron girder bridge was built at the point known as bridge 110. There was constructed a sort of a wing dam on the east and north of bridge 110, so that the water would not proceed beyond that point along the right of way and to turn it to the south.   This bridge 110 was originally built in 1872, and at the time this levee was constructed to turn the water through bridge 110.   From the time that this bridge was put in 1872, in ordinary times, outside of extreme freshets, the water in Whisky hollow came down to nearly opposite bridge 111, and then passed along the right of way of the railway company, and went down to bridge 110, and then went across under the railroad and down across Dickerson's field to the south.   There

was a channel down through Dickerson's field, known as the Smalley ditch improvement. This was in 1879. That ditch extended forty rods southeast below the railroad, the north end of which was at bridge 110. At the lower end of the ditch the waters emptied into a slough or marsh.

The bridge known as 110 was closed by the plaintiff company in 1907. It had been gradually filling prior to that time, but it was then permanently closed so that the waters from the north were not permitted to pass south of defendant railway right of way but were forced either to go east along the right of way or back up to and upon the land north.

This action was brought in equity by the plaintiff company, alleging that Whisky creek has changed and is liable to change at any time in high water; that defendant Lynch claims its natural channel is through the old channel at bridge 110 and is threatening suit against the plaintiff unless the bridge is opened; that Dickerson and Westbrook claim that the natural course of the water and drainage is eastward and north of defendant's right of way and deny that its natural flow is through bridge 110. The question is: Ought the plaintiff to be required to open its right of way for the passage of surface and overflow water north of its tracks? It is apparent from the examination of the plats in this case that the natural slope of the ground from the hills to the track is to the south and east; that this is the natural course of drainage uninterrupted by the hand of man.

Plaintiff has no right to obstruct the natural flow of surface water by such embankment as is now here maintained. They on the north have a right to insist that the surface waters, and overflow waters, and waters from natural channels shall pass from their land in the natural course of drainage. Whether the plaintiff should be required to open at other places, and whether it has obstructed the free passage of surface water at other points along its right of way, is not material to this inquiry. It constructed and maintained an opening at the place

1. DRAINAGE: obstruction of surface water by railways.

called bridge 110 for many years. Waters flowed through that opening from the land on the north. It was the means provided by the company itself for carrying away the surface water and overflow water, which otherwise would be obstructed by this embankment and cast upon the land to the north. This seemed to be the natural course of drainage for these waters; and, while we recognize the right of the railroad company to construct its road and in the construction to raise the grade in the usual and ordinary way and for the purpose for which railway grades are constructed, yet it was also under a legal obligation to the dominant owners not to obstruct the free passage of surface water, and to that end it owed the duty of constructing, at reasonable intervals, means for its escape.

We are not concerned in this case with the wings constructed by the plaintiff at the east and north of the bridge, of which complaint is made by the witnesses in their testimony, for no relief is asked against this. What effect the opening of this waterway may have on the servient owners is problematical. It seems that, before this passageway at 110 became obstructed, the water flowed through what is known as the Smalley ditch into a pond or slough.

The owners south of this track cannot complain if they are required to receive the waters that pass onto their land in the natural course of drainage. These waters the railway company were required to receive, being the servient owner, and it is entitled to pass it along according to the laws of gravitation.

2. SAME: liability of servient owner.

If the maintenance of this railway grade had the effect heretofore of protecting the land on the south from the floods that came from the north, or surface water, they acquired no right thereby to a continuation of such obstruction. It would be the right of the railway company, as against these servient owners, to substitute, at any point, trestle work for its grade and to permit the water to flow in its natural course over the lands to the south. In doing this it would be clearly within its right. The landowners to the south have acquired no right

to a continuation of this embankment or to the protection it affords, as against the company, and they have no right to insist that the company continue this obstruction of the natural flow to the prejudice of the owners of land to the north. As to these defendants on the south, the railroad company had a right, if it so elected, and the topography of the country would permit, to build all its road on trestle work and leave the surface and overflow water to pursue its natural course, and this they could do now without reasonable complaint from these defendants. That the effect of the filling up of this bridge at 110 is to cast the waters back upon the dominant estate to the north, we have no question under this record. That the plaintiff ought to be required to permit it to pass in this natural course, in the manner provided for in this decree from which appeal is taken, we have no question.

It is contended that, with this embankment and this opening at 110 closed, the water will pass along the right of way of the company to the east, if it were not for these wing dams to the north and east of the opening. This is not a question at issue here. It involves simply the right of the owners to the north to have the water flow in its natural course, in so far as the closing of this opening at 110 affects the natural flow of the water or the flow of the water in its natural course.

It appears that, after this suit was begun, joint drainage district No. 3, in Muscatine and Louisa counties, filed a petition of intervention, claiming they had an interest in the subject-matter in dispute between the plaintiff and the defendant, and alleged, as a basis for intervention, that the board of supervisors of the counties established a drainage district for the purpose of controlling and properly disposing of the waters accumulating upon the land within the district, which accumulated from and flowed out of the stream known at Whisky creek; that, commissioners having been appointed, they reported that the proper method was to establish a settling basin, and that land should be purchased for that purpose; that they undertook to purchase land from the defendant

Lynch but were unable to agree with him; that they instituted condemnation proceedings and took twenty-eight acres of land belonging to Michael Lynch for that purpose; that the land was condemned and appraised, and Michael Lynch paid for the land so taken, and that assessments were made for the purpose of paying the damage, and they say that it would be inequitable to permit the channel to be changed and the waters permitted to flow through any other channels or in any other way than in such a manner as to reach this settling basin; that Michael Lynch is within the drainage district; and the prayer of their petition is that a decree be entered confirming and establishing the drainage district and the work which has been done by and through the commissioners appointed by their respective boards.

This petition of intervention and the evidence offered to support it are predicated on the idea that a drainage district having been established by the boards of these counties, and a settling basin having been obtained from the defendant Lynch by means of condemnation proceedings, and parties within the drainage district having been assessed to pay for said land so used as a settling basin, Michael Lynch is now estopped from asking that the plaintiff company be required to no longer obstruct the free passage of surface water from his land, and that he is estopped from insisting that such obstructions as have been placed there by the plaintiff company be removed.

3. SAME: parties: intervention.

It appears to be the claim that he has no relief from any obstructions which may be made to the free flowing of surface water from his land and is under obligation legally to see to it that the surface water is conducted into this settling basin. The statement of the proposition shows that this drainage district has no interest in the controversy between the plaintiff and the other defendants, and that there is no equity in its claim. The court, therefore, rightfully dismissed the petition of intervention.

We have examined the record in this case with some care

and are satisfied that the decree of the district court is right in so far as it requires the plaintiff and the defendant Dickerson to remove the obstructions to the free flow of water over defendant's right of way at the point known as bridge 110, but the decree is modified so as to give the appellants 90 days from the entering of this decree to conform to the judgment and decree of the lower court.—*Affirmed.*

WEAVER, C. J., and PRESTON, LADD, EVANS, and DEEMER, JJ., concur. WITHROW, J., took no part.